1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TERRY SHARP,                           No. 2:24-cv-2866 CSK P

12              Plaintiff,

13        v.                                ORDER

14   DEPUTY SMITH, et al.,

15              Defendants.

16

17        Plaintiff, a former county inmate proceeding pro se, seeks relief pursuant to 42 U.S.C.

18   § 1983 and requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  This

19   proceeding was referred to this Court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

20        Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).

21   Accordingly, the request to proceed in forma pauperis is granted.

22   **I.        SCREENING STANDARDS**

23        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

24   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

25   Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

26   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

27   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

28   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

1

Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

**II.    DISCUSSION**

The alleged deprivations occurred at the Sacramento County Main Jail and the Rio Consumes Correctional Center ("RCCC").  Named as defendants are Deputy Smith, Dr. Massod,[1] Nurse Melissa, Nurse Suzanne, Deputy Mora, Deputy Yang, Deputy Barrera, Deputy Dhawihal, Deputy Gill, Deputy Her, Deputy Cervetti, Deputy Davis, Deputy Copenhaver, and 14 doe defendants.  (ECF No. 1 at 3-8.)  Plaintiff seeks money damages.  (Id. at 13.)

///

---

[1] In the complaint, plaintiff also refers to defendant Massod as defendant "Massoud" and defendant "Masood."  If plaintiff files an amended complaint, plaintiff shall clarify the correct spelling of this defendant's name.

Based on the claims in the complaint, it appears that plaintiff was a pretrial detainee at the time of the alleged deprivations.  Accordingly, this Court evaluates plaintiff's claims based on the relevant legal standards for pretrial detainees.  If plaintiff was not a pretrial detainee at the time of the alleged deprivations, plaintiff shall clarify this matter in an amended complaint.

**A.  Claims Alleging Inadequate Medical Care and Violation of Americans with Disabilities Act ("ADA")**

1. Legal Standards

*a.  Legal Standard for Inadequate Medical Care Claim*

A claim for a violation of a pretrial detainee's right to adequate medical care arises under the Fourteenth Amendment rather than the Eighth Amendment.  See Gordon v. County of Orange, 888 F.3d 1118, 1122, 1125 n. 4 (9th Cir. 2018).  The claim is evaluated under an objective deliberate indifference standard.

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1125.

For the third element, the defendant's conduct must be objectively unreasonable, "a test that will necessarily turn[ ] on the facts and circumstances of each particular case."  Id. (citations and internal quotation marks omitted).  The four-part test articulated in Gordon requires the plaintiff to prove more than negligence, but less than subjective intent– something akin to reckless disregard.  See id.

*b.  Legal Standard for ADA Claim*

Title II of the ADA, which prohibits a public entity from discriminating against a qualified individual with a disability on account of that individual's disability, covers pretrial detainees in county jails.  See Pierce v. County of Orange, 526 F.3d 1190, 1214 (9th Cir. 2008) ("It is

undisputed that Title II applies to [county] jails' services, programs, and activities for

detainees.").  "To recover monetary damages under Title II of the ADA ..., a plaintiff must prove

intentional discrimination on the part of the defendant," and the standard for intentional

discrimination is deliberate indifference.  See Duvall v. County of Kitsap, 260 F.3d 1124, 1138

(9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2011) (citing Ferguson v. City of

Phoenix, 157 F.3d 668, 674 (9th Cir. 1998)).  "Deliberate indifference requires both knowledge

that a harm to a federally protected right is substantially likely, and a failure to act upon that

likelihood."  Id. at 1139 (citing City of Canton v. Harris, 489 U.S. 378, 389 (1988)).

To state a Title II claim, a plaintiff must allege: (1) that he is an individual with a

disability; (2) that he is otherwise qualified to participate in or receive the benefit of some public

entity's services, programs, or activities; (3) that he was either excluded from participation in or

denied the benefits of the public entity's services, programs or activities, or was otherwise

discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or

discrimination was by reason of his disability.  See Thompson v. Davis, 295 F.3d 890, 895 (9th

Cir. 2002).

The proper defendant in an ADA action is the public entity responsible for the alleged

discrimination.  See U.S. v. Georgia, 546 U.S. 151, 153 (2006).  Thus, the County of Sacramento

would be the proper public entity for plaintiff's ADA claims regarding conditions at the

Sacramento County Jail.  See Duvall, 260 F.3d at 1141.  Under Title II of the ADA, The County

of Sacramento would be liable for the vicarious acts of its employees.  See id.

2. Analysis

Plaintiff raises several claims of alleged inadequate medical care.  Plaintiff alleges that on

October 17, 2022, plaintiff was released from Kaiser Permanente South Hospital into police

custody with specific aftercare instructions for a gunshot wound.  (ECF No. 1 at 11.)  Plaintiff

alleges that doe defendant doctor disregarded plaintiff's condition and switched plaintiff's wound

care from four times per day to once per day, causing infections that complicated plaintiff's

health.  (Id.)  These allegations state a potentially colorable Fourteenth Amendment claim against

doe defendant doctor.

4

Plaintiff also alleges that doe defendant doctor authorized the confiscation of plaintiff's ADA medical devices (C-collar and extra C-collar pads).  (<u>Id.</u>)  These allegations do not state a potentially colorable Fourteenth Amendment claim against doe defendant doctor because plaintiff fails to identify the condition for which plaintiff was provided the C-collar and extra C-collar pads.  Plaintiff also fails to allege that plaintiff suffered any injuries as a result of the confiscation of his C-collar and extra C-collar pads.  Accordingly, this claim is dismissed.

To the extent plaintiff seeks to raise an ADA claim against doe defendant doctor based on the alleged confiscation of plaintiff's ADA medical devices, this Court finds that plaintiff fails to state a potentially colorable ADA claim for the following reasons.  First, plaintiff fails to name the correct defendant for an ADA claim, i.e., Sacramento County.  Second, plaintiff fails to allege that he was disabled and that the confiscation of his ADA medical devices caused plaintiff to be excluded from or denied the benefits of services, programs or activities offered at the Sacramento County Jail.  Plaintiff also fails to allege that his alleged exclusion from any benefits, programs or activities offered at the Sacramento County Jail was by reason of his disability.  Accordingly, plaintiff's ADA claim is dismissed.

Plaintiff alleges that on October 17, 2022, doe defendant doctor advised that doe defendant doctor would not provide any wound care to the gunshot wound in plaintiff's neck. (<u>Id.</u>)  After October 19, 2022, plaintiff decided that the only way to get his neck treated was to rip off the C-collar and stand at the door until they "realized and panicked and treated my neck wound again."  (<u>Id.</u>)  These allegations appear inconsistent with plaintiff's claim that on October 17, 2022, doe defendant doctor switched plaintiff's wound care from four times per day to once per day.  For this reason, the claim that doe defendant doctor advised plaintiff that doe defendant doctor would not provide any wound care to the gunshot wound in plaintiff's neck is dismissed. If plaintiff files an amended complaint, plaintiff shall clarify these apparently inconsistent claims.

Plaintiff alleges that on or about October 21, 2022, during pill care, defendant Nurse Suzanne[2] removed plaintiff's neck collar and spun plaintiff's head around aggressively, resulting

---

[2]  In the discussion of this claim, plaintiff refers to defendant as "Nurse Susan."  (<u>Id.</u>)  It appears that defendant Nurse Suzanne is the defendant Nurse Susan referred to in this claim.

1  in aggravation of plaintiff's current injury and causing the nerve damage to intensify.  (Id.)  These

2  allegations state a potentially colorable Fourteenth Amendment claim against defendant Nurse

3  Suzanne.

4         Plaintiff alleges that on about December 12, 2023, defendant Smith informed plaintiff that

5  plaintiff would be medically cleared after plaintiff's neurologist visit, "further ignoring my rights

6  and disregarding Kaiser's orders stating I would need three months for recovery and physical

7  therapy."  (Id.)  These allegations against defendant Smith do not state a potentially colorable

8  Fourteenth Amendment claim for the following reasons.  First, it is not clear that defendant

9  Smith, a sheriff's deputy, made the order for plaintiff to be medically cleared.  As discussed

10  herein, plaintiff alleges that defendant Massod caused plaintiff's premature medical clearance.  If

11  plaintiff files an amended complaint, plaintiff shall clarify defendant Smith's involvement in the

12  order for plaintiff's medical clearance.  Second, while plaintiff alleges that he required three

13  months for recovery and physical therapy, plaintiff does not specifically allege that he was denied

14  physical therapy or suffered any injury as a result of failing to receive physical therapy.  In

15  addition, plaintiff's claim that he was denied three months of "recovery" is unclear.  If plaintiff

16  files an amended complaint, plaintiff shall clearly describe the injuries he suffered as a result of

17  his alleged early medical clearance.

18         Plaintiff alleges that on or around December 24, 2022, plaintiff was transferred back to the

19  Medical Housing Unit ("MHU").  (Id.)  Plaintiff alleges that defendant Smith attempted to

20  prevent plaintiff from getting medical assistance.  (Id.)  These allegations against defendant Smith

21  do not state a potentially colorable Fourteenth Amendment claim because they are vague and

22  conclusory.  Plaintiff alleges no facts demonstrating how defendant Smith attempted to prevent

23  plaintiff from getting medical assistance.  Plaintiff also does not allege that defendant Smith

24  successfully prevented plaintiff from getting medical assistance and that plaintiff suffered

25  resulting injuries.  Without this information, this Court cannot determine whether plaintiff states a

26  potentially colorable Fourteenth Amendment claim against defendant Smith.  Accordingly, this

27  claim is dismissed.

28  ///

1   Plaintiff alleges that during a January 2023 visit, plaintiff was provided a wound care

2   order to last the duration of plaintiff's stay in custody.  (Id.)  In particular, plaintiff received

3   Mepilex bandages "as a form of relief from the pressure applied to the bullet sustained in my

4   back…"  (Id.)  Plaintiff alleges that defendant Massod later discontinued this order, in disregard

5   of plaintiff's injuries.  (Id.)  These allegations state a potentially colorable Fourteenth Amendment

6   claim against defendant Massod.

7   Plaintiff alleges that several doe defendants "routinely substituted necessary medical

8   supplies with ineffective alternatives."  (Id. at 10.)  Plaintiff also alleges that these doe defendants

9   frequently missed scheduled care appointments and were unqualified to handle the level of care

10  required.  (Id. at 11, 12.)  This Court finds that these allegations do not state a potentially

11  colorable Fourteenth Amendment claim because plaintiff fails to describe the specific actions of

12  each doe defendant.  For example, plaintiff fails to identify which doe defendant failed to provide

13  proper supplies and/or failed to take plaintiff to his appointments.  Plaintiff also fails to describe

14  the proper supplies the doe defendants allegedly failed to provide and how the alternative supplies

15  caused injury to plaintiff.  Plaintiff also fails to address the injuries he allegedly suffered from the

16  missed appointments.  If plaintiff files an amended complaint, plaintiff shall clarify these matters.

17  Plaintiff alleges that defendant Massod ignored orders, apparently from doctors at Kaiser

18  Hospital, indicating that plaintiff was only at the first stage of healing, which led to plaintiff's

19  premature medical clearance and increased risk of re-injury.  (Id. at 10.)  These allegations do not

20  state a potentially colorable Fourteenth Amendment claim against defendant Massod because

21  plaintiff fails to allege that he suffered any injury based on his premature medical clearance.

22  Accordingly, this claim is dismissed with leave to amend.

23  **B. Claims Re: Alleged Violation of Right to Privacy**

24  Plaintiff alleges that from November 1, 2022 to March 18, 2023, defendant Massod

25  conducted all medical examinations and follow-ups in the general population areas, violating

26  plaintiff's rights under the Health Insurance Portability and Accountability Act ("HIPAA") and

27  "providing no confidentiality."  (Id. at 11.)

28  ///

7

1    To the extent plaintiff claims that defendant Massod violated HIPAA, plaintiff is informed

2    that HIPAA does not create a private cause of action.  See United States v. Streich, 560 F.3d 926,

3    935 (9th Cir. 2009) ("HIPAA does not provide any private right of action."); Webb v. Smart

4    Document Solutions, LLC, 499 F.3d 1078, 1081 (9th Cir. 2007) ("HIPAA itself provides no right

5    of action.").  Because there is no private right of action under HIPAA, plaintiff's HIPAA claim is

6    not cognizable under Section 1983.

7    Turning to plaintiff's claim that defendant Massod violated plaintiff's right to privacy, the

8    constitution protects the individual interests in avoiding disclosure of personal matters.  See

9    Whalen v. Roe, 429 U.S. 589, 599 (1977).  This includes medical information.  See

10   Norman-Bloodshaw v. Lawrence Livermore Lab., 135 F.3d 1260, 1269 (9th Cir. 1998).  In the

11   prison context, where inmates have generally reduced privacy rights, the government's legitimate

12   penological interests are accorded significant weight.  See Seaton v. Mayberg, 610 F.3d 530, 534-

13   35 (9th Cir. 2010).  This Court finds that plaintiff has not pled sufficient facts to state a

14   potentially colorable claim against defendant Massod for violation of plaintiff's right to privacy.

15   While plaintiff alleges that defendant Massod conducted all examinations and follow-ups with

16   plaintiff in the general population areas, plaintiff does not describe the specific conditions under

17   which these examinations were conducted.  Plaintiff also does not allege, for example, that other

18   inmates were within earshot when defendant Massod conducted these examinations and follow-

19   ups.  Accordingly, this claim is dismissed.

20   **C. Claims re: Alleged Retaliation**

21   1. Legal Standard

22   A viable claim of First Amendment retaliation entails five basic elements: (1) an assertion

23   that a state actor took some adverse action against an inmate (2) because of (3) the inmate's

24   protected conduct, and (4) the adverse action chilled the inmate's exercise of his First

25   Amendment rights and (5) did not reasonably advance a legitimate penological purpose.  See

26   Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005), see also Wilson v. Pima County Jail,

27   256 Fed. App'x 949, 950 (9th Cir. 2007) (applying Rhodes test to pretrial detainee's retaliation

28   claim).

8

1

2. <u>Analysis</u>

2   Plaintiff alleges that on December 25, 2022, jail medical staff retaliated against plaintiff

3 for filing medical grievances "during an encounter with [defendant] Deputy Smith and

4 [defendant] Sergeant John Doe in which [defendant] SRN Melissa falsely claimed a cell was

5 unavailable to medically justify a more restrictive housing setting." (ECF No. 1 at 11.)  This

6 Court finds that these allegations do not state a potentially colorable retaliation claim because

7 plaintiff fails to allege any facts demonstrating that defendants Smith, Sergeant John Doe and

8 Melissa retaliated against plaintiff because plaintiff filed medical grievances.  In addition,

9 plaintiff's claim that defendant SRN Melissa falsely claimed a cell "was unavailable to medically

10 justify a more restrictive housing setting" is unclear.  If plaintiff files an amended complaint,

11 plaintiff shall clarify the actions of defendant SRN Melissa that plaintiff claims constituted a

12 retaliatory adverse action.

13   Plaintiff next alleges that on November 8, 2023, "defendants Gil Copenhaver, Copenhaver

14 Davis and John Doe" targeted plaintiff for retaliation.  (<u>Id.</u> at 12.)  Plaintiff alleges that this

15 "targeting" stemmed from a previous incident where defendant Copenhaver had plaintiff

16 rehoused following unfounded allegations that plaintiff threatened the officers.  (<u>Id.</u>)  Plaintiff did

17 not receive a hearing and these allegations were used as justification to move plaintiff to a more

18 restrictive housing setting.  (<u>Id.</u>)  For the following reasons, this Court finds that these allegations

19 do not state a potentially colorable retaliation claim.  First, plaintiff fails to clearly identify the

20 defendants named in this claim.  While plaintiff identifies a defendant Gil and a defendant

21 Copenhaver in the section of the complaint listing defendants, plaintiff does not identify a

22 defendant "Gil Copenhaver" or a defendant "Copenhaver Davis."  Plaintiff shall clarify the

23 defendants named in this claim if he files an amended complaint.  Second, plaintiff fails to

24 describe how defendants retaliated against plaintiff based on the previous incident.  If plaintiff

25 files an amended complaint, he shall describe the specific acts of retaliation allegedly committed

26 by defendants.  Plaintiff shall also make clear the protected conduct plaintiff engaged in for which

27 defendants allegedly retaliated against plaintiff.

28 ///

Plaintiff next alleges that defendants Smith and doe denied plaintiff access to wound care for plaintiff's exposed wound in retaliation for plaintiff filing grievances.  (Id. at 10.)  For the following reasons, this Court finds that these allegations fail to state a potentially colorable retaliation claim.  First, plaintiff pleads no facts supporting his claim that defendants Smith and doe denied plaintiff access to wound care because plaintiff filed grievances.  Second, plaintiff fails to describe how and when defendants Smith and doe denied plaintiff access to wound care.  Without this information, this Court cannot determine whether plaintiff states a potentially colorable retaliation claim.  Accordingly, this claim is dismissed.

**D.  Claims re: Alleged Lockdowns/Restrictive Housing**

1.  Legal Standards

When a pretrial detainee challenges conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  The deliberate indifference set forth above for claims by pretrial detainees alleging inadequate medical care also applies to claims by pretrial detainees challenging conditions of confinement.  See Gordon, 888 F.3d at 1122, 1125 n. 4.

2.  Claim re: Lockdowns

Plaintiff alleges that from November 1, 2022 to March 1, 2023, defendants Smith and Barrera subjected plaintiff to unlawful 23-hour lockdowns in the medical housing unit.  (ECF No. 1 at 12.)  Plaintiff alleges that defendants Smith and Barrera failed to provide plaintiff with the out-of-cell time required by Title 15 and the Mays consent decree.  (Id.)

Mays v. Sacramento, 2:18-cv-2081 TLN CSK P (E.D. Cal.) ("Mays"), is a class action lawsuit filed in this court challenging conditions of confinement in the Sacramento County Jail.  Mays does not provide for an independent cause of action.  Accordingly, to the extent plaintiff seeks to raise a claim based on violation of a consent decree issued in Mays, this claim is dismissed.  In addition, to the extent plaintiff raises a claim for violation of Title 15, plaintiff is informed that Title 15 does not create a private right of action.  See Nible v. Fink, 828 Fed. App'x 463, 464 (9th Cir. 2020) (violations of title 15 of the California Code of Regulations do not create

10

1  private right of action); Thompson v. Morales, 2005 WL 8156816, at *4 (E.D. Cal. Apr. 14,

2  2005) (same), recommendations adopted, 2005 WL 8156813 (E.D. Cal. June 10, 2005).

3        While plaintiff alleges that he was subjected to 23-hour lockdowns for four months,

4  plaintiff fails to allege any harm he suffered as a result of this condition.  Plaintiff also fails to

5  address if any reason was provided for the periods of restriction.  If plaintiff is raising a claim for

6  violation of the right to exercise, plaintiff fails to address whether he received the opportunity for

7  outdoor exercise or other recreational activities outside of his cell during this time and, if so, the

8  amount of time he received for these activities.  See Shorter v. Baca, 895 F.3d 1176, 1185-86 (9th

9  Cir. 2018) (pretrial detainees are required to have some form of outdoor or otherwise meaningful

10  recreation.).  Plaintiff also fails to address whether he was physically capable of engaging in

11  outdoor exercise or other recreational activities outside of his cell during this time, as he was

12  recovering from his gunshot wound.  Without this information, this Court cannot determine

13  whether plaintiff states a potentially colorable Fourteenth Amendment claim.  Accordingly, this

14  claim is dismissed.[3]  If plaintiff files an amended complaint raising a claim for denial of outdoor

15  exercise or other recreational activities, plaintiff shall plead facts demonstrating that defendants

16  Smith and Barrera acted with deliberate indifference.

17                      3. Claim re: Restrictive Housing

18        Plaintiff alleges that doe defendants unlawfully sentenced plaintiff to restrictive housing

19  for five days but held plaintiff for six.  (ECF No. 1 at 10.)  To the extent plaintiff raises a claim

20  alleging that he was unlawfully sentenced to five days in restrictive housing, plaintiff fails to

21  plead any facts supporting this claim.  Accordingly, this claim is dismissed.[4]  Plaintiff also fails to

22

23  [3] The Ninth Circuit has determined that there is not a specific minimum amount of weekly
exercise that must be afforded to detainees.  Determining what constitutes adequate exercise

24  requires consideration of the physical characteristics of the jail and the average length of stay of
the inmates.  See Pierce v. County of Orange, 526 F.3d 1190, 1212 (9th Cir. 2008).  In Pierce, the

25  Ninth Circuit found that, "[g]iven the severity of the current restrictions and their application
across an entire category of detainees," ninety minutes of exercise per week constituted

26  punishment for purposes of Section 1983.  526 F.3d at 1213.

27  [4] "[P]retrial detainees may be subjected to disciplinary [sanctions] only with a due process
hearing to determine whether they have in fact violated any rule."  Mitchell v. Dupnik, 75 F.3d

28  517, 524 (9th Cir. 1996).  In these instances, pretrial detainees are entitled to the due process
protections outlined in Wolff v. McDonnell, 418 U.S. 539 (1974).  See Mitchell, 75 F.3d at 525.

1    plead sufficient facts in support of his claim that the doe defendants violated the Fourteenth

2    Amendment by holding plaintiff in restrictive housing one day beyond his five days sentence.

3    Plaintiff pleads no facts demonstrating that the doe defendants intentionally held him in restrictive

4    housing an extra day.  Plaintiff also fails to describe the conditions of restrictive housing.

5    Without this information, this Court cannot determine whether plaintiff states a potentially

6    colorable Fourteenth Amendment claim against the doe defendants for holding plaintiff in

7    restrictive housing for an extra day.  Accordingly, this claim is dismissed.

8                **E.  Claims re: Alleged Denial of Showers**

9           Plaintiff alleges that defendants doe, Cervetti, Mora, Yang, Smith and Barrera denied

10   plaintiff access to showers for extended periods, initially providing plaintiff with showers only

11   twice per week.  (Id.)  Plaintiff also alleges that from November 1, 2022 to March 24, 2023,

12   defendants Morris, Cervetti, Barrera, Yang and Smith denied plaintiff access to showers.  (Id.)

13          At the outset, this Court observes that defendant Morris is not listed in the section of the

14   complaint identifying defendants.  Nevertheless, for the following reasons, plaintiff fails to state a

15   potentially colorable Fourteenth Amendment claim against any defendant named in this claim

16   based on alleged denial of access to showers.  Plaintiff's claim that he received showers twice per

17   week, as pled, does not state a potentially colorable Fourteenth Amendment claim.  See Sandoval

18   v. Douglas County Jail, 2021 WL 4889840, at *10 (D. Or. Aug. 23, 2021), findings and

19   recommendations adopted, 2021 WL 4865269 (D. Or. Oct. 19, 2021) (detainee's allegation that

20   she was denied shower for five days did not allege a constitutional violation) (citations omitted);

21   Hernandez v. Olmos, 2012 WL 6571029, at *3 (E.D. Cal. Dec. 17, 2012), finding and

22   recommendations adopted, 2013 WL 6230269 (E.D. Cal. Dec. 2, 2013) ("While the Ninth Circuit

23

24   _____

     This process includes (1) twenty-four-hour advanced written notice of the charges against him,
25   Wolff, 418 U.S. at 563-64; (2) "a written statement by the factfinders as to the evidence relied on
     and reasons for the disciplinary action," id. at 564 (internal quotation marks and citation omitted);
26   (3) an opportunity to call witnesses and present documentary evidence where doing so "will not
     be unduly hazardous to institutional safety or correctional goals," id. at 566; (4) assistance at the
27   hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a sufficiently impartial fact
     finder, id. at 570-71.  There also must be some evidence to support the disciplinary decision.  See
28   Superintendent v. Hill, 472 U.S. 445, 454 (1985).

1   has not made any definitive determination as to how many showers are required per week for

2   inmates, it has certainly not held that daily showers are required.") (citations omitted); Eckard v.

3   Trenary, 2019 WL 5790485, at *2 (W.D. Wash. Jul. 18, 2019) ("The fact that plaintiff [a pretrial

4   detainee] is limited to three showers per week is simply not a sufficiently serious deprivation to

5   implicate federal concerns.  There is also an absence of objective facts indicating the limitation on

6   showers lacked a rational relationship to a legitimate government objective or was excessive in

7   relation to that objective.").  If plaintiff files an amended complaint, plaintiff shall clarify the

8   duration of time he received twice-weekly showers and the reasons given, if any, by defendants

9   for twice-weekly showers.

10      Plaintiff also fails to specifically describe the number or frequency of showers he received

11   from November 1, 2022 to March 24, 2023 or during the "extended periods" alleged in this claim.

12   For this reason, this Court cannot determine whether plaintiff states a potentially colorable

13   Fourteenth Amendment claim based on these claims.  Accordingly, these claims are dismissed.

14      **F.  Claims re: Alleged Denial of Access to Phones**

15      Plaintiff alleges that doe defendants "imposed an unlawful restriction on my access to

16   telephones, which denied me the ability to communicate with legal counsel and family."  (ECF

17   No. 1 at 10.)  The First Amendment protects "the right to communicate with persons outside

18   prison walls."  Valdez v. Rosenblum, 302 F.3d 1039, 1048 (9th Cir. 2002).  "Use of a telephone

19   provides a means of exercising this right."  Id.  A regulation that impinges on an inmate's

20   constitutional right "'is valid if it is reasonably related to legitimate penological interests.'"  Id.

21   (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).  Plaintiff's conclusory and vague claim of

22   denial of access to his family and counsel due to inadequate telephone access, without more, is

23   insufficient to support a First Amendment claim.  Accordingly, this claim is dismissed.

24      **G. Claims to Which No Defendants Are Linked/ Defendants Dhawihal and Her**

25      1. Legal Standard

26      The Civil Rights Act under which this action was filed provides as follows:

27   ///

28   ///

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution .
> . . shall be liable to the party injured in an action at law, suit in equity,
> or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert. denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

### 2. Claims to Which No Defendants are Linked

Plaintiff's complaint contains several claims to which no defendants are linked.  For example, plaintiff alleges that from October 17, 2022 to November 1, 2022, plaintiff frequently encountered nurses who were untrained to handle plaintiff's level of care, ignored requests to perform wound care orders, lacked supplies, etc.  (ECF No. 1 at 11.)  Plaintiff also alleges that

1    from December 10, 2022 to December 24, 2022, plaintiff was housed in the JKF pod during

2    which all of plaintiff's medical requests were denied, wound care orders rarely filled and the

3    scheduling of plaintiff's pain medication was often inconsistent.  (Id.)  Claims to which no

4    defendants are linked fail to state potentially colorable claims for relief.  Accordingly, the claims

5    to which no defendants are linked are dismissed.

6                  3.  Defendants Dhawihal and Her

7         Although Deputies Dhawihal and Her are named as defendants, Deputies Dhawihal and

8    Her are not linked to any of the alleged deprivations.  Accordingly, these defendants are

9    dismissed.  If plaintiff files an amended complaint naming Deputies Dhawihal and Her as

10    defendants, plaintiff shall link Deputies Dhawihal and Her to the alleged deprivations.

11    **III.**     **PLAINTIFF'S OPTIONS**

12         Plaintiff may proceed with his potentially colorable claims against defendants doe doctor,

13    Suzanne and Massod for alleged violation of plaintiff's Fourteenth Amendment right to adequate

14    medical care or he may delay serving any defendant and attempt to cure the pleading defects as to

15    his remaining claims.  If plaintiff elects to proceed forthwith against defendants doe doctor,

16    Suzanne and Massod, against whom he states potentially colorable Fourteenth Amendment

17    claims for relief, then within thirty days plaintiff shall so elect on the attached form.  In this event

18    the Court will construe plaintiff's election as consent to dismissal of the remaining claims and

19    defendants.  Under this option, plaintiff does not need to file an amended complaint.  Following

20    receipt of that form, this Court will direct the Clerk of the Court to send plaintiff the forms

21    necessary for service of defendants Suzanne and Massod.[5]  Plaintiff is advised that defendant doe

22    doctor cannot be served until plaintiff files an amended complaint substituting the name of

23    defendant doe doctor.  Through discovery, plaintiff may attempt to identify defendant doe doctor.

24    Following discovery of the identity of defendant doe doctor, plaintiff shall promptly amend his

25    complaint.

26

27    [5]  It is unclear whether service is possible on defendant Suzanne based on her first name only.
Plaintiff may provide additional information identifying defendant Suzanne with the service

28    documents.

1    Or, plaintiff may delay serving any defendant and attempt again to cure the pleading

2    defects discussed above.  If plaintiff elects to amend his complaint to cure the pleading defects

3    discussed above, plaintiff is granted thirty days to file an amended complaint.  Plaintiff is not

4    granted leave to add new claims or new defendants.

5    Any amended complaint must show the federal court has jurisdiction, the action is brought

6    in the right place, plaintiff has complied with the California Government Claims Act, and plaintiff

7    is entitled to relief if plaintiff's allegations are true.  It must contain a request for particular relief.

8    Plaintiff must identify as a defendant only persons who personally participated in a substantial

9    way in depriving plaintiff of a federal constitutional right.  Johnson v. Duffy, 588 F.2d 740, 743

10   (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an

11   act, participates in another's act, or omits to perform an act he is legally required to do that causes

12   the alleged deprivation).

13   A district court must construe a pro se pleading "liberally" to determine if it states a claim

14   and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an

15   opportunity to cure them.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000).  While

16   detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of

17   action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S.

18   662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff

19   must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is

20   plausible on its face.'"  Ashcroft, 556 U.S. at 678 (quoting Bell Atlantic Corp., 550 U.S. at 570).

21
A claim has facial plausibility when the plaintiff pleads factual
22   content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged. The plausibility
23   standard is not akin to a "probability requirement," but it asks for
more than a sheer possibility that a defendant has acted unlawfully.
24   Where a complaint pleads facts that are merely consistent with a
defendant's liability, it stops short of the line between possibility and
25   plausibility of entitlement to relief.

26   Ashcroft, 566 U.S. at 678 (citations and quotation marks omitted).  Although legal conclusions

27   can provide the framework of a complaint, they must be supported by factual allegations, and are

28   not entitled to the assumption of truth.  Id.

An amended complaint must be complete in itself without reference to any prior pleading. Local Rule 220; see Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)).  Once plaintiff files an amended complaint, the original pleading is superseded.  Plaintiff  is not granted leave to add new claims or new defendants.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

2. All claims in the complaint but for the Fourteenth Amendment claims alleging denial of adequate medical care against defendants doe doctor, Suzanne and Mossad, found potentially colorable above, are dismissed with leave to amend.  Within thirty days of service of this order, plaintiff may amend his complaint to attempt to cure the pleading defects discussed above.

3. The allegations in the complaint are sufficient to state potentially colorable Fourteenth Amendment claims against defendants doe doctor, Suzanne and Mossad for denial of adequate medical care.  See 28 U.S.C. § 1915A.  If plaintiff chooses to proceed solely as to such claims, plaintiff shall so indicate on the attached form and return it to the Court within thirty days from the date of this order.  In this event, the Court will construe plaintiff's election to proceed forthwith as consent to an order dismissing the defective claims without prejudice.  The Court will then direct the Clerk of the Court to send plaintiff the forms for service of defendants Suzanne and Mossad.

4. Failure to comply with this order will result in a recommendation that this action be dismissed.

Dated:  November 4, 2024

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Sharp2866.14

2

17

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TERRY SHARP,                              No.  2:24-cv-2866 CSK P

12              Plaintiff,

13        v.                                   NOTICE OF ELECTION

14   DEPUTY SMITH, et al.,

15              Defendants.

16
        Plaintiff elects to proceed as follows:
17

18   _____     Plaintiff opts to proceed with his potentially colorable Fourteenth
                Amendment claims alleging inadequate medical care against defendants
19              doe doctor, Suzanne and Mossad.  Under this option, plaintiff consents to
                dismissal of the remaining claims and defendants, without prejudice.
20
     **OR**
21
     _____      Plaintiff opts to file an amended complaint and delay service of process.
22

23   DATED:

24        _____
                              Plaintiff
25

26

27

28
                                   18