1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TERRY SHARP,                           No.  2:24-cv-2866 WBS CSK P

12              Plaintiff,

13        v.                                ORDER AND FINDINGS AND
                                            RECOMMENDATIONS
14   DEPUTY SMITH, et al.,

15              Defendants.

16

17   **I. INTRODUCTION**

18        Plaintiff is a former county prisoner, proceeding without counsel, with a civil rights action

19   pursuant to 42 U.S.C. § 1983.  On February 14, 2025, this Court issued findings and

20   recommendations addressing plaintiff's second amended complaint.  (ECF No. 9.)  In the findings

21   and recommendations, this Court found that some of the claims raised in the second amended

22   complaint were not potentially colorable and recommended dismissal of these claims.  (Id.)  In

23   response to the findings and recommendations, plaintiff filed a motion for extension of time to

24   file objections, objections, a request for leave to file a third amended complaint and a third

25   amended complaint.  (ECF Nos.  10, 11, 12, 13.)  For the following reasons, the February 14,

26   2025 findings and recommendations are vacated, plaintiff's motion for extension of time to file

27   objections is denied as unnecessary and plaintiff's motion to file the third amended complaint is

28   granted.  In the instant order, this Court screens the third amended complaint.

                                            1

1    **II.  MOTION TO FILE THIRD AMENDED COMPLAINT**

2         **A.  Legal Standard**

3         Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only

4    with the opposing party's written consent or the court's leave.  The court should freely give leave

5    when justice so requires."  Courts must apply this policy "with extreme liberality."  Eminence

6    Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003).  The Court has discretion to

7    grant or deny a request to amend but must provide justification when it denies a request.  See

8    Foman v. Davis, 371 U.S. 178, 182 (1962).  "A motion to amend under Rule 15(a)(2) 'generally

9    shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the

10   opposing party.'"  Chudacoff v. Univ. Med. Ctr. of S. Nev., 649 F.3d 1143, 1152 (9th Cir. 2011).

11   "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to

12   facilitate decisions on the merits, rather than on the pleadings or technicalities."  United States v.

13   Webb, 655 F.2d 977, 979 (9th Cir. 1981).

14        **B.  Analysis**

15        For the following reasons, plaintiff's motion to file the third amended complaint is

16   granted.  On October 16, 2024, plaintiff filed the original complaint.  (ECF No. 1.)  On November

17   5, 2024, this Court issued an order screening the original complaint.  (ECF No. 4.)   In the

18   November 5, 2024 order, this Court found that some of the claims raised in the original complaint

19   were potentially colorable.  (Id.)  This Court granted plaintiff thirty days to inform the Court

20   whether he intended to proceed on the potentially colorable claims or whether he opted to file an

21   amended complaint.  (Id.)

22        On November 6, 2024, plaintiff filed a first amended complaint.  (ECF No. 5.)  On

23   December 4, 2024, plaintiff filed a second amended complaint.  (ECF No. 8.)  On February 14,

24   2025, this Court issued findings and recommendations addressing the second amended complaint.

25   (ECF No. 9.)  This Court found that the second amended complaint stated six potentially

26   colorable claims for relief.  (Id.)  This Court found that seven of the claims raised in the second

27   amended complaint were not potentially colorable and recommended that these seven claims be

28   dismissed.  (Id.)  Plaintiff was not granted leave to amend.  (Id.)

1    On March 10, 2025, plaintiff filed a request to file a third amended complaint and a

2    proposed third amended complaint.  (ECF Nos. 12, 13.)  The third amended complaint omits

3    some of the claims raised in the second amended complaint that this Court found were not

4    potentially colorable, including claims alleging violations of the Americans with Disabilities Act

5    ("ADA") and the right to exercise.  (ECF No. 13.)  In addition, the third amended complaint

6    attempts to cure the pleading defects as to the claims raised against defendant Sacramento County

7    in the second amended complaint pursuant to <u>Monell v. New York City. Dep. of Social Servs.</u>,

8    436 U.S. 658 (1978).  (<u>Id.</u>)  Because plaintiff did not name defendant Sacramento County as a

9    defendant in the original complaint, plaintiff was not previously granted the opportunity to amend

10   his <u>Monell</u> claims against defendant Sacramento County.  For these reasons, this Court finds good

11   cause to grant plaintiff leave to file the third amended complaint.  While plaintiff's motion for

12   leave to file the third amended complaint is granted, this Court must still screen the third amended

13   complaint.

14        Finally, because this Court grants plaintiff's motion to amend, the February 14, 2025

15   findings and recommendations addressing plaintiff's second amended complaint are vacated and

16   plaintiff's motion for an extension of time to file objections to these findings and

17   recommendations is denied as unnecessary.

18   **III.  SCREENING STANDARDS**

19        The court is required to screen complaints brought by prisoners seeking relief against a

20   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

21   court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally

22   "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

23   monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

24        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

25   <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989); <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1227-28 (9th

26   Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

27   indisputably meritless legal theory or where the factual contentions are clearly baseless.  <u>Neitzke</u>,

28   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

3

1   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

2   Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

3   2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably

4   meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at

5   1227.

6          Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain

7   statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

8   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

9   Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

10  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a

11  formulaic recitation of the elements of a cause of action;" it must contain factual allegations

12  sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555.

13  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the

14  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v.

15  Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal

16  quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as

17  true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the

18  pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236

19  (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

20  **IV.  THIRD AMENDED COMPLAINT**

21         Named as defendants are Sacramento County, Dr. Kim Do[1], Dr. Masood, Nurse Gomez,

22  Supervising Nurse Glaser, Licensed Vocational Nurse Hailey-Currey, Nurse Mossett, Nurse

23  Akudinobi, Deputy Smith, Sergeant Mazzanti, Deputy Cervetti, Deputy Yang, Deputy Mora,

24  Deputy Cervantes, Deputy Her, Deputy Gill, Deputy Barrera, Deputy Dhaliwal, Nurse Melissa,

25  Nurse Tracy, Reema, Nurse Gladys and several doe defendants.  (ECF No. 13 at 1-4.)

26         In the body of the third amended complaint, plaintiff identifies additional defendants:

27  _____

28  [1]  In some sections of the third amended complaint, plaintiff refers to defendant Kim Do as
    defendant Do Kim.

4

1   Miring, Kaur, Zaragoza and Ballesteros.  (Id. at 14, 18, 31 32.)  In the request to file the third

2   amended complaint, plaintiff states that he is striking defendants Miring, Kaur, Zaragoza and

3   Ballesteros.  (ECF No. 12 at 3.)  Accordingly, this Court disregards the allegations made against

4   defendants Miring, Kaur, Zaragoza and Ballesteros in the third amended complaint.

5         Plaintiff's third amended complaint raises the following legal claims: 1) alleged violation

6   of plaintiff's constitutional right to adequate medical care (claims one, two, four, seven);

7   2) alleged violation of plaintiff's right to communicate (claim three); 3) alleged retaliation (claims

8   five and six); and 4) excessive solitary confinement (claim eight).  (ECF No. 13 at 44-54.)  As

9   relief, plaintiff seeks money damages and declaratory relief.  (Id. at 54.)

10        Plaintiff appears to have been a pretrial detainee at the time of the alleged deprivations.

11   **A.  Claims One, Two, Four, Seven: Alleged Inadequate Medical Care**

12        1.  Legal Standards

13           *a.  Legal Standard for Claim Alleging Inadequate Medical Care*

14        A claim for a violation of a pretrial detainee's right to adequate medical care arises under

15   the Fourteenth Amendment rather than the Eighth Amendment.  See Gordon v. County of

16   Orange, 888 F.3d 1118, 1122, 1125 n.4 (9th Cir. 2018).  The claim is evaluated under an

17   objective deliberate indifference standard.

18           [T]he elements of a pretrial detainee's medical care claim against an
19           individual defendant under the due process clause of the Fourteenth
               Amendment are: (i) the defendant made an intentional decision with
20           respect to the conditions under which the plaintiff was confined;
               (ii) those conditions put the plaintiff at substantial risk of suffering
21           serious harm; (iii) the defendant did not take reasonable available
               measures to abate that risk, even though a reasonable official in the
22           circumstances would have appreciated the high degree of risk
               involved—making the consequences of the defendant's conduct
23           obvious; and (iv) by not taking such measures, the defendant caused
               the plaintiff's injuries.

24   Id. at 1125.

25        For the third element, the defendant's conduct must be objectively unreasonable, "a test

26   that will necessarily turn[ ] on the facts and circumstances of each particular case."  Id. (citations

27   and internal quotation marks omitted).  The four-part test articulated in Gordon requires the

28   plaintiff to prove more than negligence, but less than subjective intent– something akin to

1  reckless disregard.  See id.

2                              *b.  Legal Standard for Municipal Liability*

3          Municipalities cannot be held vicariously liable under Section 1983 for the actions of their

4  employees.  See Monell, 436 U.S. at 694.  The Ninth Circuit has recognized four theories for

5  establishing municipal liability under Monell: "(1) an official policy; (2) a pervasive practice or

6  custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final

7  policymaker."  Horton by Horton v. City of Santa Maria, 915 F.3d 592, 602–03 (9th Cir. 2019).

8  To properly plead a Monell claim based on an unconstitutional policy, plaintiff must demonstrate

9  that 1) he possessed a constitutional right of which he was deprived; 2) the municipality had a

10  policy; 3) such policy amounts to deliberate indifference to plaintiff's constitutional right; and

11  4) the policy is the moving force behind the constitutional violation.  See Plumeau v. Sch. Dist.

12  No. 40 County. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

13                  2.  Claim One

14          Plaintiff alleges denial of adequate medical care by defendants Sacramento County, Kim

15  Do and Gomez.  (ECF No. 13 at 44-46.)  Plaintiff alleges that defendant Kim Do denied plaintiff

16  adequate medical care by failing to follow the aftercare orders issued by Kaiser Permanente

17  Hospital, denying plaintiff access to assistive devices, and denying plaintiff access to showers and

18  instead ordering birdbaths.  (Id. at 10-19.)  By assistive devices, plaintiff appears to refer to his

19  Philadelphia collar.  (Id.)  Plaintiff alleges that defendant Gomez denied plaintiff adequate

20  medical care by ordering bird baths.  (Id.)  This Court finds that claim one states potentially

21  colorable Fourteenth Amendment inadequate medical care claims against defendants Kim Do and

22  Gomez.

23          Plaintiff alleges that defendant Sacramento County maintained policies or customs that led

24  to the deprivations alleged in claim one.  (Id. at 45.)  Plaintiff also alleges that defendant

25  Sacramento County's failure to properly train, supervise, discipline and hire staff led to the

26  deprivations alleged in claim one.  (Id. at 45.)  In the third amended complaint, plaintiff refers to

27  the consent decree issued in Mays v. Sacramento, No. 2:18-cv-2081 TLN CSK (E.D. Cal.)

28  / / /

("Mays").[2]  (Id. at 5-6.)  Plaintiff alleges that since issuance of the Mays consent decree, there have been no effective measures taken to make the Sacramento County Jail come into compliance with federal requirements for the protection of detainee constitutional rights.  (Id. at 6.)  Plaintiff also refers to stories from various media regarding alleged mistreatment of inmates at the Sacramento County Jail including two stories regarding alleged inadequate medical care.  (Id. at 6-8.)  Plaintiff refers to an article allegedly stating that in 2023, an inmate likely died from alcohol withdrawal while being processed into the Sacramento County Jail after medical staff at the Jail failed to provide adequate medical care.  (Id. at 6.)  Plaintiff refers to an article allegedly stating that in October 2019, a woman filed a claim alleging that medical staff at the Sacramento County Jail failed to treat her broken foot.  (Id. at 8.)  Plaintiff also refers to sections of the Mays consent decree regarding the establishment of specialized medical units  (Id. at 9.)

In the third amended complaint, plaintiff pleads no specific facts demonstrating how defendant Sacramento County's alleged failure to train, supervise or discipline its employees led to the deprivations alleged in claim one.  Plaintiff also fails to identify any specific policy or custom that led to the deprivations alleged in claim one.  Plaintiff's vague and conclusory allegations against defendant Sacramento County in claim one do not state potentially colorable claims for relief based on these theories of municipal liability.  See Dougherty v. City of Covina, 654 F.3d 892, 900-01 (9th Cir. 2011) (affirming dismissal of municipal and supervisor liability claims which "lack[ed] any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements'" deemed insufficient by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Plaintiff's Monell claims may not be based on the two articles referenced in the third amended complaint regarding alleged inadequate medical care received by inmates in the Sacramento County Jail.  This Court observes that, according to plaintiff, neither article states that the claims of alleged inadequate medical care discussed in the articles were proven.  In addition, a few "isolated or sporadic incidents" are not enough to prove a municipality has an

---

[2]  Mays is a class action lawsuit challenging conditions in the Sacramento County Jail.

1    unconstitutional custom or practice.  See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).  A

2    practice or custom must have "sufficient duration, frequency and consistency" that it has "become

3    a traditional method of carrying out policy."  Id.  A "policy of inaction" can amount to an

4    unconstitutional policy.  See Connick v. Thompson, 563 U.S. 51, 61 (2011).  The pattern of

5    incidents must reflect "similar constitutional violations."  Id. at 62.  The two instances of alleged

6    inadequate medical care discussed in the articles, related to failure to treat alcohol withdrawal and

7    a broken foot, do not demonstrate a policy or custom by defendant Sacramento County to provide

8    the inadequate medical care alleged by plaintiff in claim one.

9          Plaintiff also appears to claim that defendant Sacramento County is in violation of the

10    Mays consent decree.  The Mays consent decree states, in relevant part,

11              The Remedial Plan is designed to meet the minimum level of mental
              and medical health necessary to fulfill Defendants' obligations under
12              the Eighth and Fourteenth Amendments, to avoid the unlawful use
              of segregated or restrictive housing in the jails, as well as to ensure
13              non-discrimination against people with disabilities in the areas
              addressed by the Remedial Plan, as required by the ADA and Section
14              504 of the Rehabilitation Act.

15    Mays, No. 2:18-cv-2081, ECF No. 85-1, ¶ 10.

16          On August 13, 2019, the Court approved the consent decree in Mays.  Mays, No. 2:18-cv-

17    2081, ECF No. 88.

18          To the extent plaintiff raises a claim against defendant Sacramento County for allegedly

19    violating the Mays consent decree, the alleged violation of policies adopted pursuant to the Mays

20    consent decree does not itself support a Section 1983 claim; plaintiff must identify a violation of

21    his constitutional rights.  See Yandell v. Washington, 2021 WL 3674729, at *4 (E.D. Cal. Aug.

22    19, 2021), findings and recommendations adopted, 2021 WL 4355612 (E.D. Cal. Sept. 24, 2021).

23          Accordingly, for the reasons discussed above, this Court recommends that the claims

24    against defendant Sacramento County in claim one be dismissed.

25              3.  Claim Two

26          Plaintiff alleges that defendant Sacramento County and Hailey-Currey provided

27    inadequate medical care.  (ECF No. 13 at 46-47.)  Plaintiff alleges that defendant Hailey-Currey

28    provided inadequate medical care when she improperly removed plaintiff's cervical collar and

restored it incorrectly.  (Id. at 19-21.)  This Court finds that claim two states a potentially colorable Fourteenth Amendment inadequate medical care claim against defendant Hailey-Currey.

Plaintiff alleges that defendant Sacramento County maintained policies or customs that led to the deprivations alleged in claim two.  (Id. at 46.)  Plaintiff also alleges that defendant Sacramento County's failure to properly train, supervise and discipline its employees led to the deprivations alleged in claim two.  (Id. at 46-47.)  Plaintiff pleads no specific facts in support of either of these theories of municipal liability.  For this reason, this Court finds that plaintiff does not state potentially colorable claims against defendant Sacramento County based on these theories.  See Dougherty, 654 F.3d at 900-01.  In claim two, plaintiff may also be raising a Monell claim against defendant Sacramento County based on the two articles referenced in the third amended complaint regarding alleged inadequate medical care received by inmates in the Sacramento County Jail.  In claim two, plaintiff may also be arguing that defendant Sacramento County violated the Mays consent decree.  Claims based on these theories of liability fail for the same reasons discussed above in the section addressing claim one against defendant Sacramento County.  Accordingly, this Court recommends that the claims raised against defendant Sacramento County in claim two be dismissed.

### 4. Claim Four

Plaintiff alleges a violation of his right to adequate medical care against defendants Sacramento County, Masood, Mossett, Akudinobi, Glaser, Reema and Gladys.  (ECF No. 13 at 48-49.)  Claim four appears to be based on plaintiff's allegations that these defendants acted to have plaintiff prematurely transferred out of the medical unit and that defendant Masood ordered plaintiff to alternate wearing different C collars, in violation of the aftercare orders issued by Kaiser Permanente Hospital.  (Id. at 26-31.)  This Court finds that claim four states potentially colorable claims for violation of plaintiff's Fourteenth Amendment right to adequate medical care on these grounds against defendants Masood, Mossett, Akudinobi, Glaser, Reema and Gladys.

Plaintiff alleges that defendant Sacramento County maintained policies or customs that led to the deprivations alleged in claim four.  (Id. at 49.)  Plaintiff alleges that defendant Sacramento

County's failure to properly hire, discipline, train or supervise medical staff led to the deprivations alleged in claim four.  (Id.)  Plaintiff pleads no specific facts in support of either of these theories of liability of municipal liability.  For this reason, this Court finds that plaintiff does not state potentially colorable claims against defendant Sacramento County based on these theories.  See Dougherty, 654 F.3d at 900-01.  In claim four, plaintiff may also be raising a Monell claim against defendant Sacramento County based on the two articles referenced in the third amended complaint regarding alleged inadequate medical care received by inmates in the Sacramento County Jail.  In claim four, plaintiff may also be arguing that defendant Sacramento County violated the Mays consent decree.  Claims based on these theories of liability fail for the same reasons discussed above in the section addressing claim one against defendant Sacramento County.  Accordingly, this Court recommends that the claims raised against defendant Sacramento County in claim four be dismissed.

### 5. Claim Seven

Plaintiff alleges a violation of his right to adequate medical care against defendants Sacramento County, Dhaliwal, Gil, Her and Cervantes.  (ECF No. 13 at 52.)  Plaintiff alleges that when plaintiff was sent from Kaiser Permanente Hospital to the Sacramento County Jail, the aftercare orders included a bottom bunk, bottom tier housing, an extra mattress and an extra blanket.  (Id. at 12.)  Kaiser Permanente Hospital sent the aftercare orders to the Sacramento County Jail.  (Id. at 13.)  Plaintiff alleges that around midnight on August 13, 2023, when defendants Dhaliwal and Gil transferred plaintiff to the disciplinary housing unit, plaintiff informed defendant Dhaliwal of plaintiff's mobility impairments, injuries to his neck and the bullet in plaintiff's spine.  (Id. at 41.)  Plaintiff requested his housing accommodations and asked defendant Dhaliwal to contact the "24 hour" to confirm these accommodations.  (Id. at 42.)  Plaintiff alleges that he was denied his accommodations of an extra blanket, an extra mattress, lower tier and lower bunk.  (Id.)  Plaintiff alleges that defendant Dhaliwal stated that defendant Gil could not verify these accommodations with the medical staff.  (Id.)  Plaintiff informed defendants Her and Cervantes of his required accommodations.  (Id.)  Plaintiff was placed in an upper bunk in an upper tier and was not initially provided a mattress.  (Id.)  Defendant Her failed

1    to instruct the inmate in the cell into which plaintiff was moved that the inmate would be required

2    to move to the upper bunk. (Id.)  When making the cell move, plaintiff was not able to bring his

3    mattress without making two trips. (Id.)  As a result, plaintiff was not allowed to bring his

4    mattress to the new cell. (Id.)  Plaintiff had to sleep on the metal bed frame of the upper level

5    bunk, as he did not receive a mattress, for four to eight hours. (Id.)  The denial of these

6    accommodations caused mild to severe pain and stress to plaintiff's spine and set back plaintiff's

7    recovery from his injuries. (Id.)

8         Although plaintiff alleges that defendant Dhaliwal stated that defendant Gil could not

9    verify plaintiff's accommodations with the medical staff, this Court finds that claim seven states a

10   potentially colorable claim for violation of plaintiff's right to adequate medical care against

11   defendants Dhaliwal, Gil, Her and Cervantes for their alleged failure to provide plaintiff with the

12   accommodations.[3]  Plaintiff also states a potentially colorable claim for violation of plaintiff's

13   right to adequate medical care against these defendants based on their placement of plaintiff in a

14   cell with no mattress.

15        Plaintiff alleges that defendant Sacramento County maintained policies or customs that led

16   to the deprivations alleged in claim seven. (Id. at 52.)  Plaintiff alleges that defendant Sacramento

17   County's alleged failure to train, supervise and discipline their staff led to the deprivations alleged

18   in claim seven. (Id. at 53.)  Plaintiff pleads no specific facts in support of either of these theories

19   of municipal liability.  For this reason, this Court finds that plaintiff does not a state potentially

20   colorable claim against defendant Sacramento County based on these theories. See Dougherty,

21   654 F.3d at 900-01.  In claim seven, plaintiff may also be raising a Monell claim against

22   defendant Sacramento County based on the two articles referenced in the third amended

23   complaint regarding alleged inadequate medical care provided to inmates at the Sacramento

24   County Jail.  In claim seven, plaintiff may also be arguing that defendant Sacramento County

25   violated the Mays consent decree.  Claims based on these theories of liability fail for the same

26   _____

27   [3]  Presumably, plaintiff had these accommodations in the cell defendants Dhaliwal and Gil
     transferred plaintiff from to the disciplinary unit.  Plaintiff also alleges that the aftercare orders,
28   containing these accommodations, were in plaintiff's medical records at the Sacramento County
     Jail.

1    reasons discussed above in the section addressing claim one against defendant Sacramento

2    County.  Accordingly, this Court recommends that the claims raised against defendant

3    Sacramento County in claim seven be dismissed.

4         **B.  Claim Three: Alleged Violation of Right to Communicate**

5         The First Amendment protects "the right to communicate with persons outside prison

6    walls."  Valdez v. Rosenblum, 302 F.3d 1039, 1048 (9th Cir. 2002).  "Use of a telephone

7    provides a *means* of exercising this right."  Id.  (emphasis in original).

8         Plaintiff alleges a violation of his right to communicate against doe defendants 1-4 based

9    on events occurring from October 17, 2022 to October 21, 2022 in the 2 East Medical floor.

10   (ECF No. 13 at 47-48.)  Plaintiff alleges that during this time, he was unable to make outgoing

11   telephone calls because doe defendants 1-4 "enabled the outgoing call restriction feature denying

12   [plaintiff] access to communication outside of prison walls."  (Id. at 22.)  This Court finds that

13   claim three states a potentially colorable claim for violation of plaintiff's First Amendment right

14   to communicate against doe defendants 1-4.

15        Unnamed individuals cannot be served.  The Ninth Circuit has held that where identity of

16   a defendant is unknown prior to the filing of a complaint, the plaintiff should be given an

17   opportunity through discovery to identify the unknown defendants unless it is clear that discovery

18   would not uncover the identities, or that the complaint would be dismissed on other grounds.  See

19   Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing Gillespie v. Civiletti, 629

20   F.2d 637, 642 (9th Cir. 1980)).  Following adoption of these findings and recommendations,

21   plaintiff is granted ninety days to discover the identities of doe defendants 1-4 and to substitute

22   these defendants' actual names by filing a "notice of substitution."  See Wakefield, 177 F.3d at

23   1163.  If plaintiff does not file a notice of substitution within that time, the Court will recommend

24   dismissal of claim three against these defendants without prejudice.

25        **C.  Claims Five and Six: Alleged Retaliation**

26              1.  Legal Standard for Retaliation

27        A viable claim of First Amendment retaliation entails five basic elements: 1) an assertion

28   that a state actor took some adverse action against an inmate 2) because of 3) the inmate's

protected conduct, and 4) the adverse action chilled the inmate's exercise of his First Amendment rights and 5) did not reasonably advance a legitimate penological purpose.  See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Wilson v. Pima County Jail, 256 Fed. App'x 949, 950 (9th Cir. 2007) (applying Rhodes test to pretrial detainee's retaliation claim).

### 2. Claim Five

Plaintiff alleges that defendants Cervetti, Smith, Barrera, Yang and Mora retaliated against plaintiff.  (ECF No. 13 at 49-51.)  In support of claim five, plaintiff alleges that while he was housed at the Rio Consumnes Correctional Center ("RCCC") Medical Housing Unit ("MHU"),  defendants failed to provide plaintiff with adequate "out of cell" time and access to showers.  (Id. at 36-39.)  After defendant Cervetti denied plaintiff a daily shower on March 15, 2023, plaintiff wrote a grievance regarding defendants Cervetti, Yang and Mora and their alleged failure to provide adequate "out of cell" time and access to showers.  (Id. at 39.)  On March 16, 2023, defendant Masood received a staff request to determine plaintiff's housing.  (Id.)  This request was an informal request to medically clear plaintiff.  (Id.)  Plaintiff claims that Sacramento County Deputy Sheriffs, like defendants, do not inquire about housing until a plaintiff is medically cleared.  (Id.)  Less than 12 hours after plaintiff filed his grievance, a doctor's appointment for plaintiff was scheduled to determine plaintiff's housing.  (Id.)  Plaintiff was later discharged from the medical housing unit.  (Id.)

Plaintiff claims that defendants Cervetti, Smith, Barerra, Yang and Mora requested that plaintiff be medically cleared, in apparent violation of Sacramento County Jail policy, in retaliation for plaintiff filing the grievance on March 15, 2023.  (Id. at 40.)  Plaintiff claims that he would not have been medically cleared but for defendants' coercion and use of influence to "accomplice their malice objective."  (Id.)  Plaintiff claims that he would not have been evaluated for medical clearance from the MHU but for the actions of defendants.  (Id.)

As stated above, to state a potentially colorable retaliation claim, a prisoner must show that the alleged retaliatory action advanced no legitimate penological interest.  See Rhodes, 408 F.3d at 567-68.  Here, the alleged retaliatory action was defendants' alleged request for plaintiff to be evaluated by medical staff for transfer out of the MHU.  According to plaintiff, only medical

1    staff can initiate requests for transfers out of the MHU.  However, plaintiff does not claim that he

2    should not have been discharged from the MHU in response to defendants' request.  Therefore,

3    defendants' request advanced the legitimate penological goal of removing prisoners from the

4    MHU who no longer needed to be housed in the MHU.  Accordingly, because defendants' alleged

5    referral of plaintiff to medical staff for evaluation of whether plaintiff qualified for continued

6    housing in the MHU advanced a legitimate penological goal, plaintiff fails to state a potentially

7    colorable retaliation claim against defendants Cervetti, Smith, Barrera, Yang and Mora.

8    Accordingly, claim five should be dismissed.

9              3.  Claim Six

10          Plaintiff alleges that defendants Sacramento County, Smith, Mazzanti and Melissa

11    retaliated against plaintiff for filing grievances by transferring plaintiff to cell 37 on December 6,

12    2022 and December 13, 2022.  (ECF No. 13 at 51-52, 33-36.)  Plaintiff alleges that cell 37 did not

13    have the accommodations plaintiff required for his medical conditions.  (Id.)  This Court finds

14    that plaintiff states a potentially colorable retaliation claim against defendants Smith, Mazzanti

15    and Melissa based on plaintiff's transfer to cell 37.

16          The third amended complaint contains no allegations linking defendant Sacramento

17    County to the deprivations alleged in claim six.  (Id.)  The Civil Rights Act under which this

18    action was filed provides as follows:

19              Every person who, under color of [state law] . . . subjects, or causes
               to be subjected, any citizen of the United States . . . to the deprivation
20              of any rights, privileges, or immunities secured by the Constitution .
               . . shall be liable to the party injured in an action at law, suit in equity,
21              or other proper proceeding for redress.

22    42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

23    actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

24    Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978); Rizzo v. Goode, 423 U.S. 362,

25    371-72 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within

26    the meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

27    omits to perform an act which he is legally required to do that causes the deprivation of which

28    complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

                                        14

All claims against defendant Sacramento County made in claim six should be dismissed because defendant Sacramento County is not linked to the alleged deprivations.

**D.  Claim Eight: Alleged Excessive Solitary Confinement**

Plaintiff raises a claim for excessive solitary confinement against defendants Sacramento County, Her, Cervantes and does 5-6.  (ECF No. 13 at 53.)  Plaintiff alleges that plaintiff was to be housed in solitary confinement from August 14, 2023 to August 19, 2023.  (Id. at 43.)  On August 19, 2023, plaintiff was not released from solitary confinement by doe defendants 5 and 6. (Id.)  Plaintiff told doe defendants 5 and 6 that plaintiff was supposed to be released and they told plaintiff they would look into it.  (Id.)  Plaintiff appears to claim that only defendants Cervantes, Her and does 5 and 6 had the power to move plaintiff out of solitary confinement.  (Id. at 44.)  On August 20, 2023 at midnight, plaintiff was moved out of the disciplinary housing unit, i.e., solitary confinement.  (Id.)  Plaintiff alleges that defendants Cervantes, Her and does 5 and 6 violated plaintiff's constitutional rights by causing plaintiff to be held in solitary confinement for an additional 24 hours.  (Id. at 53.)

When a pretrial detainee challenges conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  "To constitute punishment, a government action must (i) harm a detainee and (ii) be intended to punish him." Houston v. Maricopa County, 116 F.4th 935, 940 (9th Cir. 2024).  If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.  See Bell, 441 U.S. at 539.

Plaintiff fails to plead sufficient facts linking defendants Her and Cervantes to the claim that plaintiff was wrongly held in solitary confinement 24 hours after his release time.  While plaintiff alleges that defendants Her and Cervantes had the power to release plaintiff from solitary confinement, plaintiff pleads no facts demonstrating that defendants Her and/or Cervantes knew that plaintiff had not been released from solitary confinement when he should have been.  If defendants Her and/or Cervantes did not know that plaintiff was wrongfully detained in solitary confinement, they could not have violated plaintiff's constitutional rights by failing to release

15

1  plaintiff from solitary confinement.  For these reasons, claim eight against defendants Her and

2  Cervantes should be dismissed.

3          Plaintiff's claim that he was held in solitary confinement 24 hours after his release time

4  after plaintiff told doe defendants 5 and 6 that he should be released states a potentially colorable

5  Fourteenth Amendment claim against doe defendants 5 and 6.  As with the doe defendants named

6  in claim three, following the adoption of these findings and recommendations, plaintiff is granted

7  ninety days to discover the identities of doe defendants 5 and 6.  If plaintiff does not file a notice

8  of substitution within that time, the Court will recommend dismissal of claim eight against these

9  defendants without prejudice.

10          Plaintiff alleges that defendant Sacramento County knew of the abuses of excessive

11  solitary confinement via the Mays class action.  (ECF No. 13 at 54.)  Plaintiff alleges that the

12  failure of defendant Sacramento County to act coupled with its awareness of the problem via

13  Mays of excessive solitary confinement led to the deprivations alleged in claim eight.  (Id.)  As

14  discussed above, the Mays consent decree addresses the unlawful use of segregated or restrictive

15  housing in the Sacramento County Jail.  See Mays, No. 2:18-cv-2081, ECF No. 85-1, ¶ 10.

16  Plaintiff appears to claim that his being held in solitary confinement 24 hours after his release

17  time violated the Mays consent decree.  As discussed above, the alleged violation of the Mays

18  consent decree does not itself support a Section 1983 claim.  See Yandell, 2021 WL 3674729, at

19  *4.

20          Plaintiff also claims that the deprivations alleged in claim eight occurred as a result of the

21  failure of defendant Sacramento County to properly train, supervise and discipline staff.  (ECF

22  No. 13 at 54.)  Plaintiff pleads no specific facts in support of his claim that the deprivations

23  alleged in claim eight were caused by defendant Sacramento County's alleged failure to properly

24  train, supervise and discipline staff.  For this reason, this Court finds that plaintiff does not state a

25  potentially colorable claim against defendant Sacramento County based on this theory of

26  municipal liability.  See Dougherty, 654 F.3d at 900-01.  Accordingly, for the reasons discussed

27  above, the claims raised against defendant Sacramento County in claim eight should be

28  dismissed.

1    **E.  Defendant Tracy, RN**

2    The third amended complaint contains no claims against defendant Tracy, RN.

3    Accordingly, defendant Tracy, RN should be dismissed as this defendant is not linked to the

4    alleged deprivations.  See <u>Monell</u>, 436 U.S. at 692.

5    **V.  CONCLUSION**

6    As discussed above, this Court finds that plaintiff's third amended complaint states the

7    following potentially colorable claims: 1) claim one alleging that defendant Kim Do violated

8    plaintiff's Fourteenth Amendment right to adequate medical care by a) failing to provide plaintiff

9    with a Philadelphia collar; b) denying plaintiff access to showers and instead ordering birdbaths;

10   and c) disregarding the aftercare orders issued by Kaiser Permanente Hospital; 2) claim one

11   alleging that defendant Gomez violated plaintiff's Fourteenth Amendment right to adequate

12   medical care by denying plaintiff access to showers and instead providing plaintiff with birdbaths;

13   3) claim two alleging that defendant Hailey-Currey violated plaintiff's Fourteenth Amendment

14   right to adequate medical care by forcefully removing plaintiff's cervical collar and incorrectly

15   replacing the cervical collar to plaintiff's neck; 4) claim three against doe defendants 1-4 alleging

16   violation of plaintiff's right to communicate; 5) claim four alleging that defendants Masood,

17   Mossett, Akudinobi, Glaser, Reema and Gladys violated plaintiff's Fourteenth Amendment right

18   to adequate medical care by acting to have plaintiff prematurely transferred out of the medical

19   unit; 6) claim four alleging that defendant Masood violated plaintiff's Fourteenth Amendment

20   right to adequate medical care by ordering plaintiff to alternate wearing different C collars in

21   violation of the aftercare orders; 7) claim six alleging that defendants Smith, Mazzanti and

22   Melissa retaliated against plaintiff for filing grievances by housing plaintiff in cell 37; 8) claim

23   seven alleging that defendants Dhaliwal, Gil, Her and Cervantes violated plaintiff's Fourteenth

24   Amendment right to adequate medical care by failing to provide plaintiff with a bottom bunk,

25   bottom tier housing, an extra blanket and extra mattress when they transferred plaintiff to the

26   disciplinary unit and by placing plaintiff in a cell with no mattress; and 9) claim eight alleging

27   excessive solitary confinement in violation of the Fourteenth Amendment against doe defendants

28   5-6.

For the reasons discussed above, this Court finds that the following claims raised in the third amended complaint are not potentially colorable: 1) the claims raised against defendant Sacramento County in claims one, two, four, six, seven and eight; 2) claim five alleging retaliation against defendants Cervetti, Smith, Barrera, Yang and Mora; 3) claim eight alleging excessive solitary confinement against defendants Her and Cervantes; and 4) all claims against defendant Tracy, RN.

Plaintiff has already amended his complaint multiple times. Considerable court resources have been spent reviewing plaintiff's complaints. For these reasons, and because it is clear that plaintiff cannot cure the pleadings defects discussed above, **no further amendments of plaintiff's complaint are permitted**. See Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir. 2000) (en banc) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies in the complaint cannot be cured by amendment.'"). Further amended complaints filed by plaintiff will be stricken. Following the district court's adoption of these findings and recommendations, this Court will provide plaintiff with the documents necessary for service of his potentially colorable claims.

Accordingly, IT IS HEREBY ORDERED that:

1. The findings and recommendations filed February 14, 2025 (ECF No. 9) are vacated;

2. Plaintiff's motion for an extension of time to file objections to the February 14, 2025 findings and recommendations (ECF No. 10) is denied as unnecessary;

3. Plaintiff's motion for leave to file a third amended complaint (ECF No. 12) is granted; and

IT IS HEREBY RECOMMENDED that the following claims raised in the third amended complaint be dismissed: 1) the claims raised against defendant Sacramento County in claims one, two, four, six, seven and eight; 2) claim five alleging retaliation against defendants Cervetti, Smith, Barrera, Yang and Mora; 3) claim eight alleging excessive solitary confinement against defendants Her and Cervantes; and 4) all claims against defendant Tracy, RN.

These findings and recommendations are submitted to the United States District Judge

18

1    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

2    after being served with these findings and recommendations, plaintiff may file written objections

3    with the court and serve a copy on all parties.  Such a document should be captioned

4    "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that

5    failure to file objections within the specified time may waive the right to appeal the District

6    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7

8    Dated:  November 03, 2025

9

10    CHI SOO KIM
    UNITED STATES MAGISTRATE JUDGE

11

12

13    Shar2866.ame(3)/2

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28